**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| IN RE AMERICAN ADDICTION CENTERS, INC. DATA BREACH LITIGATION | Case No. 3:24-cv-01505 |
| | Chief Judge William L. Campbell, Jr. |
| | Magistrate Judge Barbara D. Holmes |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs,[1] individually, and on behalf of others similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), (b)(3), & (e), respectfully move for an order (1) conditionally certifying the proposed Settlement Class for the purpose of Settlement; (2) preliminarily approving the Settlement as within range of final approval; (3) appointing J. Gerard Stranch, IV of Stranch, Jennings & Garvey, PLLC as Class Counsel for Settlement purposes; (4) conditionally appointing Plaintiffs as Class Representatives; (5) approving the forms and substance of the Notices, Notice Program, Claim Form, and Claim Process; (6) approving the procedures for Settlement Class Members to opt-out of or object to the Settlement; (7) appointing Kroll as the Settlement Administrator and ordering it to implement the Notice Program; (8) staying the Action pending Final Approval of the Settlement; and (9) scheduling a Final Approval Hearing for a time and date mutually convenient for the Court, the Parties, Class Counsel, and Defendant's Counsel.

**I.     INTRODUCTION**

In late November and early December 2024, Defendant notified approximately 423,065 individuals—the proposed Settlement Class—about a Data Incident potentially affecting their Private Information, including personally identifiable information ("PII") and/or protected health

---

[1] All capitalized terms herein shall have the same meanings as those defined in Section II of the Settlement Agreement, attached as ***Exhibit A*** to the motion ("SA").

1

information ("PHI") such as names, addresses, phone numbers, dates of birth, medical record numbers or other identifiers, Social Security numbers, treatment information, and health insurance information. SA ¶ 2. As a result, this Action was initiated in connection with Defendant's alleged failure to safeguard Settlement Class Members' Private Information. *Id.* ¶ 3. Defendant denies all liability and wrongdoing. *Id.* ¶ 8.

After extensive arm's-length negotiations, the Parties reached a Settlement that is fair, reasonable, and adequate, providing meaningful relief to the Settlement Class. Declaration of J. Gerard Stranch, IV in Support of Plaintiffs' Motion for Preliminary Approval, ("Stranch Decl."), ¶¶ 9, 30. The Settlement's $2,750,000.00 all cash, non-reversionary common Settlement Fund will be used to pay (1) all Participating Settlement Class Member Benefits; (2) all Settlement Administration Costs; (3) any Court-awarded Service Awards; and (4) any Court-awarded attorneys' fees and costs. SA ¶ 64. All Participating Settlement Class Members may submit Claims for two types of cash payments and Credit Monitoring. *Id.* ¶ 68. Plaintiffs strongly believe the Settlement is favorable to the Settlement Class and warrants Preliminary Approval. Stranch Decl. ¶ 30.

## II.     BACKGROUND AND PROCEDURAL HISTORY

Defendant is a national provider of behavioral health and substance use disorder treatment services. SA ¶ 1. In or around September 2024, Defendant detected that an unauthorized party had gained access to parts of its internal computer systems in the Data Incident, and, after further analysis, determined that Private Information of Defendant's current and former patients may have been affected. Stranch Decl. ¶ 2. In late November and early December 2024, Defendant began sending notice letters to individuals advising that their Private Information was potentially affected in the Data Incident. *Id.* As a result of the Data Incident, Plaintiffs filed 12 proposed class actions

2

against Defendant in the United States District Court for the Middle District of Tennessee. *Id.* ¶ 3. On February 18, 2025, the related actions were consolidated into the instant Action. *Id.* In the same order consolidating the related actions, the Court appointed J. Gerard Stranch, IV, of Stranch, Jennings, & Garvey, PLLC as interim class counsel. *Id.* Plaintiffs filed the operative consolidated Complaint on April 21, 2025, asserting claims against Defendant for negligence, unjust enrichment, breach of implied contract, invasion of privacy, and declaratory relief. *Id.*

Thereafter, considering the risk, expense, and delay of continued litigation, the Parties began discussing resolving the Action and scheduled mediation with experienced data breach mediator Jill Sperber of Adjudicate West. *Id.* ¶ 5. To conserve judicial and Party resources, the Parties filed a joint motion to stay the Action pending the scheduled mediation, which the Court granted on June 2, 2025. *Id.* ¶ 6. Prior to the mediation, Plaintiffs requested, and Defendant propounded, informal discovery pertaining to the nature and cause of the Data Incident, the class size, the specific types of Private Information impacted, and Defendant's financial status. *Id.* ¶ 7. Plaintiffs also prepared and produced a mediation statement outlining their position. *Id.*

On September 15, 2025, the Parties participated in a full-day mediation session, which was ultimately successful and resulted in an agreement in principle to settle the Action. *Id.* ¶ 8. The Parties then worked cooperatively to negotiate and finalize Settlement terms and the Agreement, Notices, and Claim Form accompanying this Motion. *Id.* ¶ 10.

## III.   SUMMARY OF SETTLEMENT

### A.   Settlement Class

The Settlement Class is defined as follows:

All persons whose Private Information was potentially compromised in the Data Incident, including all individuals to whom Defendant sent an individual notification letter regarding the Data Incident.

3

SA ¶ 57. Excluded from the Settlement Class are (a) all persons who are directors and officers of Defendant, or their respective subsidiaries and affiliated companies; (b) governmental entities; (c) the Judge(s) assigned to the Action, the Judge's immediate family, and Court staff; and (d) any Settlement Class Member who timely and validly requests to be excluded from this Settlement. *Id.*

## B.     Settlement Consideration

The Settlement's non-reversionary $2,750,000.00 Settlement Fund will be the total sum required to be paid by Defendant to settle this Action and will be used to pay (1) all Participating Settlement Class Member Benefits; (2) all Settlement Administration Costs; (3) any Court-awarded Service Awards; and (4) any Court-awarded attorneys' fees and costs. *Id.* ¶ 59, 64. All Participating Settlement Class Members are all eligible to submit Claims for (1) Credit Monitoring; (2) reimbursement of documented expenses and losses up to $5,000; and (3) a pro rata cash payment *Id.* ¶ 68.

**1.     *Reimbursement for Documented Expenses*:** All Participating Settlement Class Members may submit a Claim for reimbursement of their documented expenses and losses that are fairly traceable to the Data Incident, up to $5,000.00 per Claimant. *Id.* ¶ 68(b). To receive this payment, Participating Settlement Class Members must submit a Claim Form electing to receive reimbursement for documented expenses, and (a) the Claim must be supported with third-party documentation; (b) the expense or loss must be an actual, documented, and unreimbursed monetary expense or loss; (c) the expense or loss must be fairly traceable to the Data Incident; (d) the expense must have been incurred after the first date of the Data Incident; and (e) the expense must not have been already covered by one or more of the other reimbursement categories or otherwise reimbursed by a third party, including but not limited to a financial institution. *Id.* The categories of reimbursable expenses include, but are not limited to, (1) losses from fraudulent transactions

4

wherein an unauthorized individual diverted, debited, withdrew, or otherwise conducted fraudulent operations to deprive the Claimant of actual money; (2) bank fees; (3) postage; (4) copying; (5) travel costs; (6) notary fees related to addressing the misuse of the Settlement Class Member's Private Information; (7) fees for credit repair services; and (8) costs for additional credit reports, credit monitoring, or other identity theft insurance products. *Id.*

2.      **Pro Rata *Cash Payments***: All Participating Settlement Class Members may submit a Claim for a *pro rata* cash payment to compensate them for their alleged harms. *Id.* ¶ 68(c). This cash payment is in addition to any Claims for Credit Monitoring and reimbursement for document expenses and losses. *Id.* The *pro rata* cash payment is estimated to be $50 per Claimant, but will be increased or decreased on a *pro rata* basis to exhaust the Settlement Fund. *Id.* For purposes of calculating the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the Settlement Fund first for payment of Credit Monitoring, then for reimbursement for documented expenses, and then for *pro rata* cash payments. *Id.* Any *pro rata* increases or decreases to cash payments will be on an equal percentage basis. *Id.*

3.      ***Credit Monitoring***: In addition to electing either or both types of cash payments, Participating Settlement Class Members may elect up to two years of Credit Monitoring from one major credit bureau, which will include at least $1,000,000 in identity theft protection insurance. *Id.* ¶ 68(a). This Participating Settlement Class Member Benefit is available to all Settlement Class Members regardless of whether they enrolled in the credit monitoring offer included in the Data Incident notification letter. *Id.*

4.      **Cy Pres *Recipient***: The Settlement is intended to exhaust the Settlement Fund. *Id.* However, after Participating Settlement Class Members are given an opportunity to cash their checks, as provided for in the Agreement (*id.* ¶ 100), any remaining funds in the Settlement Fund

shall be distributed to a *cy pres* recipient to be agreed upon by the Parties. *Id.* ¶ 68(d). Such recipient shall have no affiliation with the Parties or their counsel and must be reasonably related to privacy or data protection, or the promotion of the same through training and awareness programs. *Id.*

**5.** **Releases:** The Releasing Parties will release the Released Parties for all Released Claims, which include all claims relating to or arising from the Data Incident, including Unknown Claims. *Id.* § XI. Settlement Class Members who do not opt-out of the Settlement are bound by the Releases regardless of whether they submit a Claim. *Id.* ¶ 82.

**C.** **Notice Program, Claim Process, Opt-Outs, and Objections**

**1.** **Settlement Administrator:** The Parties agree that subject to Court approval, Kroll shall be the Settlement Administrator. *Id.* ¶ 71. The Settlement Administrator will be responsible for administering all aspects of the Settlement Agreement, including disseminating Notice, processing Claims, and distributing Participating Settlement Class Member Benefits. *Id.* ¶ 72. The Parties shall jointly oversee the Settlement Administrator. *Id.* ¶ 71. All Settlement Administration Costs, including, without limitation, the fees and expenses of the Settlement Administrator, shall be paid, or caused to be paid, from the Settlement Fund. *Id.* ¶ 73.

**2.** **Notice Program:** Defendant will deliver the Class List to the Settlement Administrator no later than 10 days after entry of the Preliminary Approval Order. *Id.* ¶ 77. Within 30 days following entry of the Preliminary Approval Order, the Settlement Administrator will commence the Notice Program pursuant to the Agreement, using the forms of Notice approved by the Court. *Id.* ¶ 78.

Direct Notice will be sent to Settlement Class Members via double-sided Postcard Notices that include a tear-off Claim Form and prepaid postage. *Id.* ¶ 79. The Postcard Notice shall include,

6

among other information, the following: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the Opt-Out Deadline and Objection Deadline; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class Members may access the Agreement and other related documents and information. *Id.* The Settlement Administrator shall insert the correct dates and deadlines in the Notices before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order, should Preliminary Approval be granted. *Id.* The Settlement Administrator will perform an advanced address lookup to ensure up-to-date mailing addresses are being used when sending Postcard Notices to the Settlement Class. *Id.* ¶ 86. If the Settlement Administrator is notified that Postcard Notices were not delivered, the Settlement Administrator will perform a skip trace and remail Notice to an updated mailing address. *Id.* No later than 30 days before the Claim Deadline, Opt-Out Deadline and Objection Deadline, the Settlement Administrator shall complete the re-mailing of Postcard Notice to those Settlement Class Members whose new addresses were identified as of that time through address traces. *Id.* ¶ 87.

In addition, the Settlement Administrator will establish the Settlement Website prior to the Notice Program's initiation. *Id.* ¶ 81. The Settlement Website will make available the Court-approved online Claim Form, which can be submitted directly on the Settlement Website or in printable version that can be sent by U.S. Mail to the Settlement Administrator. *Id.* The Settlement Website will also include the Long Form Notice, which sets out the procedures for Settlement Class Members to opt-out of the Settlement or object to the Settlement or the Application for Attorneys' Fees, Costs, and Service Awards. *Id.* ¶¶ 81–82. The Postcard Notice will also direct Settlement Class Members to the Settlement Website and the Long Form Notice. *Id.*

     **3.**     ***Claim Process***: The Claim Process is structured to ensure all Settlement Class

members have adequate time to review the Settlement terms; compile documents supporting their Claim for reimbursement of documented expenses, if elected; submit Claims; and decide whether to opt-out or object. Stranch Decl. ¶ 24. Claim Forms (mail or online) are due to the Settlement Administrator by the Claims Deadline (60 days following the Notice Completion Date). SA ¶¶ 15, 37. The Claim Form is in plain language for easy completion. Stranch Decl. ¶ 24. The Settlement Administrator will review the Claim Forms for completeness and validity. SA ¶ 90.

4. **Opt-outs and Objections**: The Opt-Out Period and Objection Period begin the day after the earliest day on which the Notice is first distributed and end 60 days thereafter. *Id.* ¶¶ 40, 41. These dates are specifically calculated to provide sufficient time to access and review the Settlement documents, including the Application for Attorneys' Fees, Costs, and Service Awards, to be filed no later than 14 days before the Opt-Out Deadline and Objection-Deadline and posted on the Settlement Website. *Id.* ¶ 102. Settlement Class Members who opt-out may not object.

D. **Service Awards; Attorneys' Fees and Costs**

1. **Service Awards**: The Settlement Agreement calls for reasonable Service Awards for the Class Representatives of up to $2,000.00 each. *Id.* ¶ 104. The Service Awards are meant to compensate the Class Representatives for their efforts in this Action, including serving as named Plaintiffs, assisting in Class Counsel's investigation, maintaining contact with Class Counsel, reviewing case documents, being prepared to assist with discovery, and answering Class Counsel's questions. *Id.*; Stranch Decl. ¶ 17. Defendant will not oppose Plaintiffs' request for Service Awards to the extent it does not exceed this amount. SA ¶ 104. Defendant moreover will not object to Plaintiffs' appointment as Class Representatives solely for purposes of this Settlement. *Id.* The Parties did not discuss Plaintiffs' request for their Service Awards until after the substantive terms of the Settlement had been agreed upon. *Id.* ¶ 105.

8

**2.** *Attorneys' Fees and Costs*: Plaintiffs will move the Court for an order awarding reasonable attorneys' fees to Class Counsel up to a total of one-third of the Settlement Fund ($916,666.67), and reimbursement of reasonable litigation expenses. *Id.* ¶ 107. Defendant will not oppose Plaintiffs' Application for Attorneys' Fees and Costs to the extent it does not exceed that amount. *Id.* The Parties did not discuss the payment of attorneys' fees, costs, and/or expenses until after the substantive terms of the Settlement had been agreed upon, and the Settlement is not contingent on approval of the Application for Attorneys' Fees, Costs, and Service Awards; if the Court denies the request or grants amounts less than what was requested, the remaining provisions of the Agreement shall remain in force. *Id.* ¶¶ 109–10. The Notices advise the Settlement Class of these intended requests and further information on how to object.

## IV. ARGUMENT AND MEMORANDUM OF LAW

The preliminary approval stage provides a forum for the initial evaluation of a settlement, and where no class has been previously certified, a determination as to whether a proposed settlement class should be certified. 2 Newberg & Conte, *Newberg on Class Actions* §§ 11.22, 11.27 (3d ed. 1992). Federal Rule of Civil Procedure 23(e) provides that a class action may not be settled without the approval of the court upon finding the proposed settlement is fundamentally fair, reasonable, and adequate. Fed. R. Civ. P. 23(e); *see also Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990) (citing *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir.1986)).

On a motion for preliminary approval, courts recognize an "especially strong" presumption in favor of voluntary settlement agreements in class actions, "where substantial judicial resources can be conserved by avoiding formal litigation.'" *Mullins v. Data Mgmt. Co.*, No. 1:20-cv-214, 2021 WL 2820560, at *4 (S.D. Ohio June 21, 2021) (quoting *Ehrheart v. Verizon Wireless*, 609

F.3d 590, 594-95 (3d Cir. 2010)). Accordingly, at the preliminary approval stage, the bar to meet the fair, reasonable, and adequate standard is lowered. *See, e.g.*, *Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 621 (E.D. Mich. Jan. 17, 2020); *Lott v. Louisville Metro Gov't*, No. 3:19-CV-271-RGJ, 2023 WL 2562407, at *1 (W.D. Ky. Mar. 17, 2023) ("At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval.") (internal citation omitted).

The Settlement here is fair, reasonable, and adequate, providing meaningful and immediate relief to the Settlement Class. Accordingly, the Court should provisionally certify the Settlement Class and grant Preliminary Approval of the Settlement.

### A.     The Court Should Certify the Proposed Settlement Class for Settlement Purposes.

Under Rule 23(a), a class action may be maintained where the movants demonstrate numerosity, commonality, typicality, and adequacy of representation. Additionally, under Rule 23(b)(3), a class action may be maintained where the predominance and superiority elements are met. When evaluating certification of a settlement class, manageability is not a concern because there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Despite the necessarily rigorous analysis of certain prongs at the preliminary approval stage in disputed matters, class actions are regularly certified for settlement. In fact, similar data breach cases have been certified—on a *national* basis—including the record-breaking settlement in *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, 362 F.Supp.3d 1295 (N.D. Ga. 2019). *See also, e.g.*, *Tate v. Eyemed Vision Care, LLC*, No. 1:21-cv-36, 2025 WL 2119389, at *4–6 (S.D. Ohio July 29, 2025); *Smith v. Specialty Networks LLC*, No. 1:24-cv-286, 2025 WL 1944022, at *5–8 (E.D. Tenn. July 15, 2025); *In re Cinfed Fed. Credit Union Data Breach Litig.*, No. 1:23-cv-776,

2025 WL 1637686, at *5–7 (S.D. Ohio June 10, 2025); *In re Wasserstrom Holdings, Inc. Data Breach Litig.*, No. 2:23-cv-2070, 2025 WL 1563548, at *3–5 (S.D. Ohio Apr. 11, 2025); *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015). This case is no different.

**Numerosity:** Numerosity requires that "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). Here, the proposed Settlement Class consists of approximately 423,265 individuals, which easily satisfies this requirement. *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996) ("The United States Court of Appeals for the Sixth Circuit has previously held that a class of 35 was sufficient to meet the numerosity requirement."). Judicial economy would be well-served by certification.

**Commonality.** Commonality requires Plaintiffs to show "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The threshold is not high, as every question need not be common; "The commonality test 'is qualitative, rather than quantitative, that is, there need be only a single issue common to all members of the class.'" *In re Am. Med. Sys.*, 75 F.3d at 1080 (internal citation omitted); *see also Walmart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("[F]or purposes of Rule 23(a)(2), even a single common question will do."). Here, there are multiple common questions of both law and fact. Plaintiffs' and Settlement Class Members' claims derive from the same Data Incident and charge the same wrongdoing—Defendant's alleged failure to implement reasonable cybersecurity safeguards to adequately protect Private Information. Moreover, Plaintiffs' claims present the same legal questions, including whether Defendant owed Plaintiffs and the Settlement Class a duty of care to implement reasonable cybersecurity measures, and whether Defendant breach that duty. These common questions, and others alleged in the Complaint, are central to the causes of action, generate common answers, and can be addressed

11

classwide. Accordingly, the commonality requirement is satisfied.

*Typicality.* Plaintiffs' claims must also be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality assesses "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). Plaintiffs satisfy that requirement here because their claims arise out of the same Data Incident and the cybersecurity protocols Defendant had (or did not have) in place to protect their Private Information, as is the case for all putative Settlement Class Members, and present the same legal theories as would be presented if each Settlement Class Member filed his or her own individual case. *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007); *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997) (claims need not be identical but should merely "arise from the same course of conduct"). Because Plaintiffs' claims arise from and address the same Data Incident, the typicality requirement is met here.

*Adequacy of Representation.* Plaintiffs as Class Representatives must be able to provide fair and adequate representation of the Settlement Class's interests. Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has articulated two criteria for determining adequacy: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083. Both criteria are satisfied here.

First, Plaintiffs have common interests with the putative Settlement Class Members in that they were all impacted by the same Data Incident and their claims present common questions of law and fact. Moreover, Plaintiffs have diligently and successfully prosecuted this Action on behalf of the Settlement Class, showing their interests and those of the other Settlement Class Members

12

are aligned. Stranch Decl. ¶ 17; *Ham v. Swift Transp. Co., Inc.*, 275 F.R.D. 475, 486 (W.D. Tenn. July 1, 2011) (adequacy satisfied where "all plaintiffs were allegedly injured in the same manner by the same actions of the same defendant" and "there is no suggestion that the named plaintiffs will receive a windfall at the expense of any absent class member"). Thus, Plaintiffs have and will continue to adequately represent the Settlement Class, should the Court appoint them as Class Representatives. Second, Plaintiffs have retained knowledgeable and well-qualified Class Counsel who have successfully prosecuted many class actions, including data breach class actions like this case. Stranch Decl. ¶ 18. Class Counsel put that experience to use in negotiating the early-stage Settlement guaranteeing immediate relief to the Settlement Class. Accordingly, Class Counsel has adequately represented the Settlement Class here.

*Predominance and Superiority.* The Court may certify a Rule 23(b)(3) class if it "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 560 (6th Cir. 2007); *Ham*, 275 F.R.D. at 482. Both requirements are easily satisfied here.

The predominance inquiry requires the Court to assess "the legal or factual questions that qualify each class member's case as a genuine controversy" and "whether those questions are subject to generalized proof, and thus applicable to the class as a whole." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017). Predominance is met if a *single* common factual or legal question is "at the heart of the litigation." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Here, multiple common questions of law and fact predominate: Plaintiffs' and Settlement Class Members' claims all arise from the

same Data Incident and Defendant's same alleged failures to implement reasonable cybersecurity practices. Plaintiffs' and Settlement Class Members' claims also present common questions of law: whether Defendant owed Plaintiffs and the Settlement Class a duty to safeguard their sensitive Private Information; whether Defendant breached that duty; whether Defendant's conduct or failure to act was the proximate cause of the Data Incident; and whether Plaintiffs and Settlement Class Members are entitled to recovery.

The common questions predominate over any individualized issues, like in other data breach cases. *See, e.g.*, *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012) (predominance satisfied in data breach case despite state law variations, concluding such variations went only to trial management, which was inapplicable for settlement class); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–15 (N.D. Cal. 2018) (same); *Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372-KGG , 2018 WL 1871449, at *2–3 (D. Kan. Feb. 15, 2018) (same); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2–3 (N.D. Ga. Aug. 23, 2016) (same).

Rule 23(b)(3)'s superiority requirement is likewise satisfied because "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *See Arends v. Family Sols. of Ohio, Inc.*, No. 21-0303/21-3375, 2022 WL 13915151, at *3 (6th Cir. June 17, 2022) (quoting Fed. R. Civ. P. 23(b)(3)). In other words, a class action is superior if it "is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 407–08 (E.D. Mich. 2012). Here, individual adjudication of all Settlement Class Members' claims would be virtually impossible. Indeed, it would likely mean the individual filing of over 400,000 cases, which would drain judicial and advocate resources. Thus, a class action is the superior mechanism for Plaintiffs and Settlement Class Members to seek legal redress.

14

Accordingly, with Rule 23(a) and 23(b)(3) satisfied, the Settlement Class should be provisionally certified.

**B.      The Settlement is Fair, Reasonable, and Adequate, Warranting Preliminary Approval.**

Rule 23(e) sets forth the factors courts must consider in determining the fairness of a proposed class action settlement: whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). In addition to Rule 23(e), courts in the Sixth Circuit evaluate the following factors in determining whether to approve a class action settlement: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *Pelzer v. Vassalle*, 655 F. App'x 352, 359 (6th Cir. 2016). The proposed Settlement satisfies all criteria to warrant Preliminary Approval here.

**1.      The Settlement Satisfies Rule 23(e)'s Requirements**

**a.      Plaintiffs and Class Counsel Adequately Represented the Settlement Class**

Pursuant to Rule 23(e)(2)(A), the Court considers whether the class representatives and class counsel adequately represented the class. Here, Plaintiffs, as the putative Class Representatives, have represented the Settlement Class admirably. They made themselves available to Class Counsel when necessary, reviewed filings, provided Class Counsel with documents and other evidence, and helped prosecute this Action diligently. Stranch Decl. ¶ 17.

Class Counsel who negotiated the proposed Settlement is an experienced and respected class action litigator with significant experience in data breach cases. *See Id.* ¶ 18, 27–29 & Ex. A

15

(firm resume). Before mediation, the Parties engaged in meaningful informal discovery, exchanging documents and information related to the composition of the Settlement Class and the Data Incident. *Id.* ¶ 7. Before any Settlement terms were negotiated, Class Counsel conducted extensive and lengthy interviews with Plaintiffs and putative Settlement Class Members, analyzed the documents and information produced by Defendant in advance of mediation, and developed a thorough understanding of the complex technical issues underlying the claims and defenses in this Action, as well as the applicable laws of Tennessee and other relevant jurisdictions. *Id.* ¶ 18. Following the Parties' September 15, 2025 mediation, Class Counsel worked diligently to draft and finalize the proposed Settlement and its exhibits, revise those drafts, and negotiate the details of the final proposed Settlement with Defendant's Counsel. *Id.* This factor therefore weighs in favor of Preliminary Approval.

### b. The Settlement Was Negotiated at Arm's Length

A strong presumption of fairness attaches to a proposed settlement where, as here, the parties negotiate at arm's length with the assistance of a mediator. *See Mullins*, 2021 WL 2820560, at *4–5 ("The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.") (internal citations omitted); *Gokare, P.C. v. Fed. Express Corp.*, No. 2:11-CV-2131-JTF-CGC, 2013 WL 12094870, at *7 (W.D. Tenn. Nov. 22, 2013) (same); 2 *McLaughlin on Class Actions* § 6:7 (8th ed. 2011) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion.").

The proposed Settlement is the product of hard-fought, arm's-length negotiations between experienced attorneys on both sides, including a formal mediation overseen by an experienced mediator, Jill Sperber of Adjudicate West. Stranch Decl. ¶ 5. No fraud or collusion influenced the

16

Parties' settlement negotiations facilitated by a well-qualified neutral. *Id.* ¶ 9. This factor therefore weighs in favor of Preliminary Approval. *See Kutzback v. Riviana Foods, Inc.*, No. 2:22-cv-02025-JPM-atc, 2023 WL 2261417, at *1 (W.D. Tenn. Feb. 27, 2023) (citing *Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008)).

### c. The Participating Settlement Class Member Benefits Are Substantial.

The proposed Settlement is a fair and reasonable result that delivers tangible and immediate relief to all Settlement Class Members. In determining whether the benefits provided by a proposed class action settlement are adequate, Rule 23(e)(2) directs the Court to consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Each of these considerations weighs in favor of Preliminary Approval here.

### i. *Costs, risks, and delay of trial and appeal*

The Settlement guarantees Participating Settlement Class Members real relief for their injuries and protections from potential future fall-out from the Data Incident. First, all Settlement Class Members may elect Credit Monitoring, including identity theft insurance, to monitor and protect their credit and identity going forward. SA ¶ 68(a). Second, all Settlement Class Members may submit Claims for up to $5,000 for documented losses and/or a *pro rata* cash payment. *Id.* ¶ 68(b)–(c). Comparing the proposed Settlement with recoveries obtained for classes of consumer plaintiffs in other data breach settlements demonstrates this Settlement's strength.[2] *See* Stranch

---

[2] *See, e.g.*, *Rutledge v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SPC (E.D. Mo.) (reimbursement of out-of-pocket expenses and lost time up to $180, credit monitoring, and data security enhancements); *Chacon v. Nebraska Medicine*, No. 8:21-cv-00070 (D. Neb.)

Decl. ¶¶ 30–31.

Although Plaintiffs are confident in the merits of their claims, the litigation risks cannot be disregarded. Data breach litigation is particularly complex because the law "has not yet been fully developed" and the parties would face "significant expenses in briefing and arguing class certification, summary judgment, expert reports, and maintaining class certification throughout trial." *In re Wawa, Inc. Data Sec. Litig.*, No. 19-6019, 2023 WL 6690705, at *7 (E.D. Pa. Oct. 12, 2023); *see also Jackson v. Nationwide Ret. Sols., Inc.*, No. 2:22-cv-3499, 2024 WL 958726, at *4 (S.D. Ohio Mar. 5, 2024) ("[T]he technical issues involved in data breach cases are complex."); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015) (because "legal issues involved in [in data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues"). Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases generally face substantial hurdles—even just to make it past the pleading stage. *See, e.g., Logan v. Marker Grp., Inc.*, No. 4:22-cv-00174, 2024 WL 3489208 (S.D. Tex. July 18, 2024) (dismissing all but one claim). Class certification is another hurdle. *See, e.g., In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-mn-02972-JFA, 2024 WL 2155221

---

(reimbursement of ordinary expenses up to $300, extraordinary expenses up to $3,000, credit monitoring, and data security enhancements); *Carter v. Vivendi Ticketing United States LLC*, No. SACV 22-01981-CJC (DFMx) (C.D. Cal.) (reimbursement of documented losses up to $6,000, choice of credit monitoring or $100 flat cash payment); *Bahnmaier v. Wichita State Univ.*, No. 2:20-cv-02246-JAR-TJJ, (D. Kan.) (reimbursement of lost time up to $60, and out-of-pocket losses up to $300); *Baksh v. IvyRehab Network, Inc.*, No. 7:20-cv-01845 (S.D.N.Y.) (reimbursing up to $75 out-of-pocket expenses and $20 for lost time, capped at $75,000 in the aggregate, credit monitoring, and data security enhancements); *Rutledge v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SPC (E.D. Mo.) (reimbursing out-of-pocket expenses and lost time up to $180, credit monitoring, and data security enhancements); *Chacon v. Nebraska Medicine*, No. 8:21-cv-00070 (D. Neb.) (reimbursing ordinary expenses up to $300, extraordinary expenses up to $3,000, credit monitoring, and data security enhancements).

(D.S.C. May 14, 2024) (denying class certification in a data breach case).

Besides the potential that either side will lose at trial, Plaintiffs anticipate substantial additional costs if litigation continues, including expert witness fees. Stranch Decl. ¶ 21. The Settlement's value is guaranteed in the face of uncertainty in prevailing on the merits and costs that doing so would require. Plaintiffs dispute the Defendant's defenses, but obviously success at class certification and trial is far from certain. Through the Settlement, Plaintiffs and the Settlement Class gain significant benefits without risking not receiving any relief at all if the Action continues. Because the Settlement benefits outweigh the risks and uncertainties of continued litigation— including the attendant time and expenses associated with contested class-certification proceedings, completing merits discovery, pretrial motion practice, trial, and appeal—this factor weighs in favor of Preliminary Approval.

### ii. *Method of distributing relief to the Class*

The Settlement's proposed method of distributing Participating Settlement Class Member Benefits is not unduly burdensome and deters fraudulent claims. The Class List will be provided by Defendant and validated by the Settlement Administrator. The Settlement provides for effective Notice to the Settlement Class and a straightforward Claim Process for Settlement Class Members to submit Claims. The Claim Process is structured to ensure all Settlement Class members have adequate time to review the Settlement terms; compile documents supporting their Claim for reimbursement of documented expenses, if elected; submit Claims; and decide whether to opt-out or object. Stranch Decl. ¶ 24. Accordingly, this factor therefore weighs in favor of Preliminary Approval.

### iii. *Proposed attorneys' fee award*

Class Counsel has devoted significant time and financial resources to this Action despite

the uncertainties of prevailing on the merits, obtaining class certification, and succeeding at trial (along with any appeals). Class Counsel did not broach the topic of attorneys' fees and costs until after agreeing on all substantive Settlement terms with Defendant's Counsel. Stranch Decl. ¶ 13. Class Counsel intends to seek reimbursement of reasonable litigation costs and an attorneys' fee award of one-third the Settlement Fund, equal to $916,666.67, subject to Court approval. *Id.* ¶ 14. As the forthcoming Application for Attorneys' Fees, Costs, and Service Awards will further detail, courts in the Sixth Circuit have identified contingent fee requests of this magnitude as squarely within the range of awards found to be reasonable. *See, e.g.*, *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 2:12–cv–83, 2014 WL 2946459, at *2 (E.D. Tenn. June 30, 2014) (awarding one-third of common fund, equal to a lodestar multiplier up to 2.5). Plaintiffs will file the Application for Attorneys' Fees, Costs, and Service Awards prior to the Opt-Out Deadline and Objection Deadline, in accordance with the Settlement Agreement. SA ¶ 102.

### iv. <u>No additional agreements</u>

Rule 23(e) requires the Court to consider any agreement reached between the Parties outside of the proposed Settlement Agreement. *See* Fed. R. Civ. P. 23(e)(3) ("The parties seeking approval must file a statement identifying any agreement made in connection with the proposal."). No such agreement exists in this case. Stranch Decl. ¶ 25.

### d. The Settlement Treats Settlement Class Members Equitably

A class settlement need not require "pro rata distribution"; it must just be fair, reasonable and adequate. *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 629 (6th Cir. 2007). This can be satisfied even where class members will be entitled to different amounts based on the benefits they select. *See Peck v. Air Evac EMS, Inc.*, No. 5: 18-615-DCR, 2019 WL 3219150, at *7 (E.D. Ky. July 17, 2019) ("While the class

20

members will receive differing amounts, the amount that each class member will receive is based on the actual number of unpaid overtime hours that each person worked."). Here, all Settlement Class Members are eligible to file Claims for the same Participating Settlement Class Member Benefits, if said benefits apply to the Claimant. All Settlement Class Members are eligible to submit Claims for *pro rata* cash payments and Credit Monitoring. SA ¶ 68(a), (c). All Settlement Class Members who incurred documented losses fairly traceable to the Data Incident may also submit Claims for reimbursement for those expenses, up to $5,000 per Claimant. *Id.* ¶ 68(b). The proposed Settlement therefore treats all Settlement Class Members fairly and equitably relative to each other and in relation to the strengths of their claims.

## 2. The Settlement Satisfies the Traditional Factors Considered by the Sixth Circuit

All traditional factors considered in the Sixth Circuit likewise weigh heavily in favor of Preliminary Approval. *See Pelzer*, 655 F. App'x at 359 (traditional Sixth Circuit factors are (1) risk of fraud or collusion; (2) complexity, expense and likely duration of the litigation; (3) amount of discovery; (4) likelihood of success on the merits; (5) opinions of class counsel and class representatives; (6) reaction of absent class members; and (7) public interest).

### a. No Risk of Fraud or Collusion

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Jones v. Varsity Brands LLC*, No. 2:20-cv-02892-SHL-tmp, 2024 WL 5010412, at *6 (W.D. Tenn. Dec. 6, 2024) (quoting *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008)). Further, as discussed *supra* in connection with the overlapping Rule 23(e) requirement of arm's length negotiations, "'the participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties.'" *Gokare*, 2013 WL 12094870, at

*3(quoting *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007)). No fraud or collusion influenced the Parties' Settlement negotiations, which were facilitated by a well-qualified neutral mediator. Stranch Decl. ¶ 9. This factor thus weighs in favor of Preliminary Approval.

### b. Complexity, Expense, and Duration of Litigation

As discussed *supra* in connection with the overlapping Rule 23(e) requirement of adequate relief for the Settlement Class, data breach litigation is particularly complex because the law "has not yet been fully developed," and the Parties would face "significant expenses in briefing and arguing class certification, summary judgment, expert reports, and maintaining class certification throughout trial." *In re Wawa*, 2023 WL 6690705, at *7; *see also Jackson,* 2024 WL 958726, at *4 (noting that "the technical issues involved in data breach cases are complex"). Plaintiffs and Class Counsel diligently prosecuted the Action, including investigating, researching, and filing initial complaints; coordinating with Plaintiffs' attorneys to consolidate all related cases into the instant Action; investigating, researching, and drafting the operative consolidated Complaint; requesting and reviewing informal pre-mediation discovery from Defendant; researching and drafting a comprehensive mediation statement outlining the facts and law supporting Plaintiffs' claims; and participating in a full-day mediation that culminated in the Parties agreeing to resolve the Action. Stranch Decl. ¶ 8.

Without the Settlement, Plaintiffs and Class Counsel would face substantial time and expenses associated with contested class-certification proceedings, completing merits discovery, pretrial motion practice, trial, and appeal. Stranch Decl. ¶¶ 20–21. Besides the potential that either side will lose at trial, Plaintiffs anticipate substantial additional costs if litigation continues, including expert witness fees. *Id*. ¶ 21. Thus, the complexity and expense required to engage in prolonged data breach litigation also weighs in favor of Preliminary Approval.

### c. Amount of Discovery

Sixth Circuit courts also consider the stage of the litigation and amount of discovery exchanged between the Parties. *Pelzer*, 655 Fed. App'x at 359. Importantly, however, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Ditsworth v. P & Z Carolina Pizza*, 2021 WL 2941985, at *3 (W.D. Ky. July 13, 2021). Here, the Parties agreed to negotiate the Action's early resolution and ultimately agreed to a Settlement without the need for expensive and prolonged discovery. Stranch Decl. ¶ 4. Moreover, the informal discovery exchanged between the Parties during and leading up to mediation was more than sufficient to fully understand the Parties' relative positions, including the strengths of Plaintiffs' claims and Defendant's defenses. *Id.* ¶ 7. Thus, this factor weighs further in favor of Preliminary Approval.

### d. Likelihood of Success on the Merits

In considering this factor, courts "are not required 'to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'" *Does 1–2 v. Déjà Vu Services, Inc.*, 925 F.3d 886, 895 (6th Cir. 2019) (quoting *Officers for Justice v. Civ. Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)).

As discussed *supra* in connection with the overlapping Rule 23(e) requirement of adequate relief for the Settlement Class, while Plaintiffs and Class Counsel strongly believe the claims presented in this case are meritorious and Plaintiffs would prevail at trial, they nonetheless understand the risks and delays associated with prolonged litigation and believe the Settlement benefits here outweigh those risks. Stranch Decl. ¶¶ 20–21. Due at least in part to their cutting-

edge nature and the rapidly evolving law, data breach cases generally face substantial hurdles, at the pleading stage and again with respect to class certification. *See, e.g., Logan*, 2024 WL 3489208; (dismissing all but one claim in data breach case); *Blackbaud*, 2024 WL 2155221 (denying class certification in data breach case).

Moreover, if Plaintiffs continued with litigation in lieu of Settlement, they and Settlement Class Members would likely face years of delays in obtaining access to the important and valuable Participating Settlement Class Member Benefits. Absent Settlement, Plaintiffs face the specter of protracted litigation including objections to class certification, a summary judgment motion, defending expert opinions, trial, and appeals. *See In re Wawa*, 2023 WL 6690705, at *7 (noting data breach law "has not yet been fully developed" and the parties would face "significant expenses in briefing and arguing class certification, summary judgment, expert reports, and maintaining class certification throughout trial"). Though Plaintiffs and Class Counsel believe in the strength of this case, they understand that these issues would present significant delay and risk, making settlement even more beneficial to the Settlement Class. Thus, this factor weighs in favor of Preliminary Approval.

### e. Opinions of Class Counsel and Class Representatives

Regarding this Sixth Circuit factor, "'[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement.'" *Green v. Platinum Restaurants Mid-America LLC*, 2022 WL 1240432, at *5 (W.D. Ky. Apr. 27, 2022) (quoting *UAW v. Ford Motor Co.*, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008)). Plaintiffs support the Settlement, as does Class Counsel based on his years of experience litigating similar cases. Stranch Decl. ¶ 30. This factor thus strongly supports Preliminary Approval. *See Green*, 2022 WL 1240432, at *5 (approving class settlement where "the experienced attorneys on each side, after

24

assessing the relative risks and benefits of litigation, believe that the settlement is fair and reasonable").

### f. Reaction of Absent Settlement Class Members

While the Settlement Class's reaction to the Settlement will be an important consideration for the Court in determining whether to grant Final Approval, this factor is not quantifiable at the Preliminary Approval stage, as the Court has not yet ordered the Settlement Administrator to provide Settlement Class Members with Notice of the Settlement. Thus, any reaction of the Settlement Class has not yet manifested beyond the putative Class Representatives' uniformly positive reaction.

### g. Public Interest

Courts have often espoused "a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Coleman v. Amazon.com, Inc.*, 2025 WL 582495, at *6 (W.D. Tenn. Feb. 21, 2025) (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)); *see also Wasserstrom Holdings*, 2025 WL 1563548, at *8 (quotations omitted) ("Public policy generally favors settlement of class action lawsuits."). The Settlement here provides a prompt resolution to the Settlement Class in this difficult and unpredictable data privacy case, conserving judicial and Party resources. As with all other relevant factors, the strong public interest in favor of settlement supports Preliminary Approval.

## C. The Proposed Settlement Administrator Will Provide Adequate Notice.

Rule 23(e)(1) requires "direct reasonable notice to all class members who would be bound by" a proposed settlement. For a Rule 23(b)(3) class, notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be

identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). It is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). To satisfy this standard, "all that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 759 (6th Cir. 2013) (quotations and citations omitted).

The proposed Notice Program is designed to satisfy Rule 23(c)(2)(B) and due process. *See* SA, Exs. 1–3. Every Settlement Class Member will receive direct and individual notice via Postcard Notice sent by mail. SA ¶ 79. If a Postcard Notice is undeliverable, the Settlement Administrator will research a better address and re-send Notice. *Id.* ¶ 86. The Long Form Notice will also be available to Settlement Class members on the Settlement Website, along with all relevant filings. *Id.* ¶¶ 32, 60. The Settlement Administrator will maintain a toll-free telephone number by which Settlement Class members can seek answers to frequently asked questions or request a Long Form Notice or Claim Form be mailed. *Id*. ¶ 76(f). A post office box will be maintained to receive Claim Forms, opt-out requests, and objections. *Id*. ¶ 76(d).

The Notices are clear and straightforward, defining the Settlement Class and the Settlement's essential terms; clearly describing the options available to the Settlement Class and the deadlines for taking action; disclosing the requested Service Awards for the Class Representatives, the attorneys' fee Class Counsel intends to seek, and that litigation costs will be sought; explaining the opt-out, objection, and Claim procedures and deadlines; stating the Final Approval Hearing date, time, and location; and prominently displaying Class Counsel's contact information. SA, Exs. 1–3.

The proposed direct Postcard Notice is the gold standard, and paired with the Settlement Website, Long Form Notice, and toll-free telephone number that provide further information to the Settlement Class. The Notice Program is consistent with notice programs approved in this Circuit and warrants approval here. *See*, *e.g.*, *Wasserstrom Holdings*, 2025 WL 1563548, at *3.

**D.** **The Court Should Provisionally Appoint Class Counsel.**

In connection with Preliminary Approval of the Settlement and provisional certification of the Settlement Class, Plaintiffs request the Court affirm its interim appointment of J. Gerard Stranch, IV of Stranch, Jennings & Garvey, PLLC as Class Counsel. The Court previously appointed Mr. Stranch as interim class counsel upon considering the Rule 23(g) factors. *See* Doc. 16. Class Counsel has vigorously represented the interests of Plaintiffs and the Settlement Class Members since this litigation's inception. Considering Class Counsel's work in this Action and the resources Class Counsel's firm has dedicated to it, along with his expertise and years of experience in handling similar data privacy actions, the Court should provisionally appoint Class Counsel for purposes of Settlement.

**V.** **PROPOSED SCHEDULE OF EVENTS**

The Court should also set the Final Approval Hearing date and time. Deadlines in the Final Approval process, including the Opt-out and Objection Deadlines, will be determined based on the date the Preliminary Approval Order is entered, if granted. Plaintiffs propose the following schedule, in accordance with the Settlement Agreement:

| | |
|---|---|
| **Notice Commencement Date (Postcard Notice Sent)** | 30 days after Preliminary Approval Order |
| **Notice Completion Date (Notice Program Completed)** | 45 days after Preliminary Approval Order |

| Motion for Final Approval and Application for Attorneys' Fees, Costs, and Service Awards | 14 days before Opt-Out Deadline and Objection Deadline |
|---|---|
| **Opt-Out Deadline** | 60 days after Notice Commencement Date |
| **Objection Deadline** | 60 days after Notice Commencement Date |
| **Deadline to Submit Claim Forms** | 60 days after the Notice Completion Date |
| **Final Approval Hearing** | **_____, _____, at ___ am/pm.** |

## VI.  CONCLUSION

Plaintiffs and Class Counsel respectfully request the Court (1) conditionally certify the proposed Settlement Class for the purpose of Settlement; (2) preliminarily approve the Settlement; (3) appoint J. Gerard Stranch, IV of Stranch, Jennings & Garvey, PLLC as Class Counsel for Settlement purposes; (4) conditionally appoint Plaintiffs as Class Representatives; (5) approve the forms and substance of the Notices, Notice Program, Claim Form, and Claim Process; (6) approve the procedures for Settlement Class Members to opt-out of or object to the Settlement; (7) appoint Kroll as the Settlement Administrator and ordering it to implement the Notice Program; (8) stay the Action pending Final Approval of the Settlement; and (9) schedule a Final Approval Hearing for a time and date mutually convenient for the Court, the Parties, Class Counsel, and Defendant's Counsel.

Dated: November 21, 2025                    Respectfully submitted,

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (TN BPR 23045)
Grayson Wells (TN BPR 039658)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com

28

gwells@stranchlaw.com

***Interim Class Counsel***

**CERTFICATE OF SERVICE**

I hereby certify that on this 21st day of November, 2025, the foregoing document was filed with the Clerk of the Court using the Court's CM/ECF system, which will then send notice to all counsel of record.

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (TN BPR 23045)
